LEONARD ALVIN & JULIE ANN BATES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bates v. Commissioner
Docket No. 26460-83.
United States Tax Court
T.C. Memo 1985-153; 1985 Tax Ct. Memo LEXIS 474; 49 T.C.M. (CCH) 1093; T.C.M. (RIA) 85153; April 1, 1985. *474 Held: Petitioner's employment as a steamfitter-welder assignee was indefinite and thus, a deduction for expenses to travel to and from work incurred during 1980 and 1981 is not allowable under section 162(a)(2). Leonard Alvin Bates, pro se. Carolyn L. Harper, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in petitioners' income tax of $2,763.84 for 1980 [1] and $2,032 for 1981. After concessions, *475 the only issue for decision is whether petitioners are allowed to deduct expenses incurred in 1980 and 1981 for travel to and from work under section 162(a)(2). [2]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners resided in Rome, Georgia, when they filed the petition in this case, [3] and during the years in issue petitioners lived in Aragon, Georgia. Rulie Ann Bates is a party solely by virtue of having filed a joint return for the taxable year ended December 31, 1981. For convenience, petitioner Leonard Alvin Bates will be referred to as either Bates or petitioner. On August 23, 1978, petitioner was *476 employed by the Tennessee Valley Authority (TVA) as a steamfitter-welder assignee at the Bellefonte Nuclear Plant in Hollywood, Alabama. [4] Aragon, Georgia, is approximately 100 miles from Hollywood, Alabama. The duties of a steamfitter-welder assignee are to weld on high and low pressure piping systems that are needed to build a nuclear plant. A steamfitter-welder assignee lacks the welding experience of a journeyman, but can weld in accordance with TVA and Nuclear Regulatory Commission guidelines. The TVA hired steamfitter-welder assignees at Bellefonte because of a shortage of available steamfitter-welder journeymen, who have at least 4 years experience of welding high pressure piping. When petitioner was initially employed by TVA as a steamfitter-welder assignee, the customary 11 months and 29 day period of employment used by TVA in its agreement with all hourly workers was stated in his contract. TVA viewed all these hourly workers as temporary employees. The provision of a period of 11 months *477 and 29 days was put into such contracts in order to be able to hire workers despite the total employment freeze imposed on all Federal agencies during 1972. While this provision was in effect, persons employed such as petitioner would be terminated for a period of 2 weeks at the end of the 11 month and 29 day period and then re-employed on the same basis if their services were needed. At the time of petitioner's employment, he was hired under the following special appointment conditions: He had to pass a TVA welding test; he was not qualified for a steamfitter-welder class; he would be laid off before non-assignees; and he would be terminated when qualified candidates became available. Because he was not qualified for a steamfitter-welder class, his duties were restricted. Bates was given credit for his prior military service of 4 years, 9 months and 21 days, towards his employment seniority status. His contract was to expire on October 18, 1978. On October 6, 1978, before the end of petitioner's initial contract, TVA ceased using the 11 month and 29 day provision and converted the appointment to a Trades and Labor Temporary Construction Hourly appointment with no termination *478 date. Workers under this appointment were employed until their services were no longer needed; however, the special appointment conditions did not change. The Bellefonte project in 1978 had a projected completion date of 1983. This completion date was revised as follows: [5]
Time of Revised Projection
Revised Projected Completion Date
April 1979
August 1985
May 1980
August 1986
The projected needs for steamfitter-welders in 1978 and 1980 were as follows: Year
1978 Projected Needs
1980 Projected Needs
1978
750
1979
800
1980
800
1,400
1981
146
1,400
The number of steamfitter-welders actually employed and laid off at Bellefonte were as follows: Year
Steamfitter-Welder [6]
Lay-Offs
1978
795
1979
1,149
1980
1,416
39
1981
1,506
85
The primary factor in determining who is laid off is seniority. Assignees compete only with assignees for lay-off purposes and are laid off before journeymen. *479 Assignees with less than 1 year's experience are laid off first. A steamfitter-welder assignee with military service is separated from the group of such assignees without military experience because of the crediting of service time. Under the federal guidelines dealing with reduction in force, a steamfitter-welder assignee, who is a veteran and has over one year's service, has veteran's preference rights in addition to his seniority status. Petitioner's work at Bellefonte has been satisfactory. In fact, petitioner never was terminated from his work at TVA and was still employed at the Bellefonte Plant at the time of the trial of this case. On November 11, 1981, Bates became a union member and on December 8, 1981, he qualified as a steamfitter-welder journeyman. On his returns for the 1980 and 1981 taxable years, petitioner claimed automobile expenses as employee business expenses in the amount of $7,004.00 and $7,686.00 respectively. These expenses were disallowed by respondent. OPINION On brief, petitioner argues his employment at the Bellefonte Plant was temporary until December 1981, and thus, his travel expenses should be allowed. Respondent argues that petitioner *480 is not entitled to deduct the expenses at issue because (1) the expenses were not incurred "while away from home"; (2) petitioner's residence in Georgia was maintained for personal rather than business reasons; and (3) petitioner's employment by TVA was indefinite rather than temporary. Personal expenses are ordinarily not deductible. Section 262. Section 162(a)(2), however, allows the taxpayer to deduct certain expenses if they are traveling expenses paid or incurred "while away from home in the pursuit of a trade or business" if he can establish they were: (1) Reasonable and necessary traveling expenses; (2) incurred "while away from home"; and (3) incurred in pursuit of a trade or business. ; $1 . We will first consider whether petitioner was away from home for the purposes of section 162(a)(2). This Court has held that a taxpayer's "home" for the purposes of section 162(a)(2) is the vicinity of his principal place of employment whenever his personal residence is not located in the same vicinity. ; *481 . There, however, is an exception to this rule when a taxpayer with a well-established tax home accepts temporary employment as opposed to indefinite or indeterminate employment elsewhere. In this context, temporary employment means the sort of employment in which termination within a short period of time could be logically expected and foreseen. , affg. a Memorandum Opinion of this Court; ; . On the other hand, whenever termination of employment cannot be expected or foreseen within a fixed or reasonably short period of time, the taxpayer's tax home shifts to such place of employment so that he cannot satisfy the "away from home" requirement. . Furthermore, when employment which was temporary in contemplation at the date of its commencement becomes indeterminate in duration, then "the situs of such employment for purposes of the statute becomes the taxpayer's *482 home." . Employment may change from temporary to indefinite due to changed circumstances or simply by the passage of time. .Whether a taxpayer's employment is "temporary" as opposed to "indefinite," "substantial," or "permanent" is a question of fact. ; ; Among the relevant factors to be considered is whether the taxpayer logically expected that the employment would last for a short period of time or that the job itself would not extend beyond a reasonably brief duration. The burden of proving that his employment was temporary rests on petitioners. ; Rule 142(a). In the present case it is clear that during 1980 and 1981 termination of petitioner's employment on the Bellefonte project could not be logically expected or foreseen within a fixed or reasonably short period of time. *483 Bates began his employment on August 23, 1978. He was hired under a contract that was due to expire on October 18, 1978. Prior to October 18, 1978, TVA ceased using the 11 month and 29 day provision. The new arrangement provided that Bates would be employed until his services were no longer needed. Thus, no basis exists for the contention that the 11 month and 29 day provision had any relevance to the time period for which Bates could expect to be employed. The fact that petitioner's contract stated that he was a temporary [7] employee is not determinative of the issue herein. ; . In fact, Bates never was terminated from his work at TVA and was still employed at the time of this trial. *484 The projected completion date for the Bellefonte project was continuously revised and extended into the future. There was no reason to believe that the job would not extend indefinitely into the future. Beginning in 1978 and up through the years at issue, the number of steamfitter-welder positions increased dramatically. Thus, it is clear from the record that during 1980 and 1981, Bates' employment was indefinite and Bates had every reason to believe it was. Petitioner argues that his employment was temporary in that he was subject to being laid off. Bates however had been credited with his military service for his seniority status during the years at issue. This fact in addition to the relatively small percentage of lay-offs that occurred during the years in issue leads us to conclude that it was not reasonable to expect his job to terminate within a short period of time by reason of being laid off. Petitioner has failed to prove that during 1980 and 1981 termination of petitioner's employment could be foreseen within a fixed or reasonably short period of time. Rule 142(a). Since he has failed to establish that his job *485 was temporary and has not met the away from home requirement, we find that petitioner's expenses are not deductible under section 162(a)(2). Decision will be entered for the respondent.
Footnotes
1. A Motion to Dismiss for Lack of Jurisdiction as to Petitioner Julie Ann Bates for the Taxable Year 1980 was granted on Jan. 19, 1980. Therefore, for the 1980 taxable year only Leonard Alvin Bates is a party. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Rome, Georgia, is where petitioners resided at the time of filing, although their mailing address was Aragon, Georgia.↩
4. At the same time petitioner accepted employment with TVA he had applied for work at other companies. However, he has not applied for any other employment since that time.↩
5. Although the completion dates have been revised, no reactors have been deferred or cancelled at the Bellefonte plant.↩
6. These numbers include steamfitter-welder assignees and steamfitter-welder journeymen.↩
7. We understand the confusion caused to petitioners by the fact that the meaning of the word "temporary" in their work contracts is different from the meaning of the word "temporary" as a term of art for business expense purposes under section 162. In view of the extensive judicial precedent on this tax issue, petitioners must look to the Congress for establishment of a different rule.↩